UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARDELL PATRICE HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14CV1064 RLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court affirms the decision of the Commissioner.

### I. Procedural History

On April 20, 2012, Plaintiff filed an application for a period of disability and Disability Insurance Benefits, as well as an application for Supplemental Security Income. (Tr. 11, 127-39) Plaintiff alleged that she became unable to work on March 1, 2012 due to lower back pain and knee pain. (Tr. 58, 127, 133) The applications were denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 57-62, 65) On July 18, 2013, Plaintiff testified before an ALJ. (Tr. 28-41) On August 15, 2013, the ALJ determined that Plaintiff had not been under a disability from March 1, 2012, through the date of the decision. (Tr. 11-24) Plaintiff then filed a request for review, and on April 2, 2014, the Appeals Council

denied said request. (Tr. 2-4) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the July 18, 2013 hearing before the ALJ, Plaintiff was represented by counsel. Upon examination by the ALJ, Plaintiff testified that she was 53 years old and graduated from high school. She previously worked for the Knights Inn motel as a housekeeper; for various lounges, where she was paid in cash; and for White Castle as a cashier, cook, and cleaner. Plaintiff testified that she worked for White Castle from 2007 to 2011 but was fired after her employer accused her of sealing. She then received unemployment benefits for two years. (Tr. 30-32)

Plaintiff further stated that she weighed 185 pounds and measured 5 feet one inch. She complained of back problems, including spasm and herniated discs. In 2012, Plaintiff underwent an MRI and was also examined by a neurologist. The neurologist did not recommend surgery and told Plaintiff to try and live with the conditions. When her back symptoms worsened, she used a walker. (Tr. 32-33)

Plaintiff also testified to experiencing depression or mood swings. She sat by herself and thought about things that depressed her. She did not take medication for depression, and she did not receive care from a psychiatrist or psychologist. Plaintiff stated that she was unable to sit for a long time due to back pain. She would get up and try to walk to relieve the pain. (Tr. 33-34)

Plaintiff's attorney also questioned Plaintiff regarding her impairments. Plaintiff testified that her doctor advised her to walk for exercise. Plaintiff walked every day for about one block. She was unable to walk further due to pain in her back. When she returned home after her walk, she tried to do exercises to loosen her back. Plaintiff stated that she could walk a half hour before needing to rest. To relax her muscles she sat with a pillow behind her or curled up in a

2

ball. She could stand in one place for five minutes. Plaintiff experienced back spasms every other day. She testified that the spasms felt as though her two muscles are playing tug-of-war. One muscle pulled in one direction while the other pulled the opposite way. Plaintiff was unable to move during these episodes. The spasms lasted a half hour to an hour. Plaintiff took prescribed muscle relaxers when her spasms flared up. The medication eased the pain, and the spasms eventually went away. However, the muscle relaxers caused drowsiness, so Plaintiff only took the medication when she was home. (Tr. 35-37)

A vocational expert ("VE") also testified at the hearing. The ALJ set forth two hypotheticals for the VE's consideration. The ALJ first asked the VE to assume a 51-year-old claimant with 12 years of education and 2 past jobs that were considered substantial gainful activity. The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 out of 8 hours; sit for 6 hours; occasionally climb stairs and ramps; never climb ropes, ladders, or scaffolds; occasionally stoop, kneel, and crouch; and should avoid concentrated exposure to extreme cold and unprotected heights. Given this hypothetical, the VE testified that the individual could perform both prior jobs as a housekeeper and fast food worker. (Tr. 38)

For the second hypothetical, the ALJ asked the VE to assume the first hypothetical with an additional sit/stand option to allow the claimant to briefly change positions every 30 minutes and resume working. The VE responded that the individual could not perform her past relevant work. However, she would be able to perform other jobs such as tanning salon attendant and parking lot attendant. (Tr. 39-40)

3

Plaintiff's attorney also questioned the VE, asking whether an employer would tolerate the need for an extra half hour break every other day. The VE answered that this factor would preclude all competitive employment. (Tr. 40)

In a Disability Report – Adult, Plaintiff listed her conditions that limited her ability to work as lower back pain and knee pain. Plaintiff reported that she stopped working on April 30, 2011 because she was fired. She believed her conditions became severe enough to keep her from working on March 1, 2012. Plaintiff completed the 12th grade and had business training. The interviewer noted that Plaintiff used a walker for assistance, wore glasses when signing her name, and held onto the desk when standing. (Tr. 158-67)

Plaintiff also completed a Function Report – Adult, reporting that she did mostly nothing from the time she woke up until going to bed. She needed 10 to 15 minutes to get out of bed due to pain in her lower back. She would then fix a bowl of cereal. Plaintiff took pain medication and tried to exercise. She could only be on her feet for about 5 to 10 minutes at a time. She saw her doctor once a month and felt her back condition was deteriorating. Plaintiff was able to care for her personal needs but experienced pain. She could prepare cereal, sandwiches, and oatmeal. However, she did not prepare full meals because she was unable to stand longer than 5 minutes due to pressure and severe pain in her lower back. Her mother and brother performed the household chores and yard work. Plaintiff reported that she never went outside because she could not stand or sit for more than 5 to 10 minutes. She did not feel pain if she lay on her side. She was able to ride in a car but needed help getting in and out. She did not drive, and her mother did all the shopping. Plaintiff was able to handle money. Her only hobby was watching TV, but only when she was not in pain. (Tr. 176-80)

Plaintiff claimed that her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and stair climb. She could walk about 1/4 block before needing to rest for 15 to 20 minutes. She did not finish what she started but was able to follow written and spoken instructions, get along with authority figures, handle stress, and handle changes in routine. Plaintiff used a walker, but it was not prescribed by any doctor. (Tr. 182-83)

### III. Medical Evidence

On September 26, 2011, Plaintiff was examined at the North Central Community Health Center for complaints of chronic back pain. She reported that her back pain began 2 to 3 years earlier as a result of a car accident. Plaintiff stated that the pain ran from her shoulder blades to her mid-lower back on both sides. She took Tylenol, Advil, and Aleve to relieve the pain. She also reported numbness and tingling in her hands and arms. She smoked less than a pack of cigarettes a day. Examination revealed back spasms to shoulders and upper anterior chest. Plaintiff had full range of motion of shoulder and neck, with some mild stiffness. Dr. Mecca T. McDonald assessed muscle spasm and prescribed medication. (Tr. 212-13)

On November 2, 2011, Plaintiff reported that the muscle relaxants helped, but the pain was worse with bending and sneezing. Physical examination revealed flexion to greater than 90 degrees and no paraspinal muscle tenderness. Dr. McDonald assessed back muscle spasm and prescribed Cyclobenzaprine and Naprosyn. (Tr. 211)

Plaintiff returned to Dr. McDonald on January 30, 2012, complaining of depression, mood swings, and not wanting to be around people. Psychiatric review noted anxiety, depression, irritation, frequent crying, and difficulty falling asleep. Suicidal ideation and suicidal planning were not present. Dr. McDonald assessed depression and referred Plaintiff to Social Services. (Tr. 210)

5

On February 6, 2012, Plaintiff saw Doris King, MSW. Plaintiff reported being a loner and wanting to stay by herself. She kept things bottled up, which made her angry. She was afraid she would "explode," and she mentioned that she lost jobs because she "goes off" on managers. On examination, Plaintiff alternated between being visibly upset and needing to talk about her situation. Ms. King noted that Plaintiff required an initial evaluation to diagnose her symptoms and stabilize her on the appropriate medications. Ms. King referred Plaintiff to a psychiatry program and counseling services, noting that counseling could help Plaintiff deal with possible schizoaffective diagnosis and symptoms. (Tr. 209)

Plaintiff returned to Dr. McDonald on February 27, 2012 for complaints of lower back pain. She had not started counseling, and her medication for depression upset her stomach. Review of systems demonstrated back pain, back ache, and depression. Examination revealed muscle spasm bilaterally, lumbar spine paraspinally. She had forward flexion to 90 degrees, as well as normal gait and station and normal posture. Dr. McDonald assessed back muscle spasm and depression. (Tr. 207)

On March 5, 2012, Plaintiff complained of back pain and an upset stomach from the medication samples given for depression. She reported that the Naproxen helped the pain and that she had three scheduled counseling appointments. Plaintiff was in no acute distress. Dr. McDonald again diagnosed back muscle spasms and depression and advised Plaintiff to return in three months. (Tr. 206)

On April 16, 2012, Harris reported severe pain and requested stronger pain medication. She was using a walker. Plaintiff stated that she did not go to her psychiatric appointments because she could not get out of bed. Dr. McDonald found no generalized swelling or edema of

extremities, no digital clubbing or cyanosis and neurovascularly intact globally with deep tendon reflexes. Her gait, station, and posture were normal. Dr. McDonald ordered an MRI and assessed back muscle spasm and depression. (Tr. 204) An MRI of the Lumbar Spine without contrast showed spinal stenosis at L4-5 and L3-4 secondary to a bulging disc at L3-4 and L4-5; and disc herniation at L4-5 and L5-S1 with nerve encroachment on the left. (Tr. 203, 252)

Plaintiff complained of back pain, left knee pain, and a bladder infection during a clinic visit on April 19, 2012. She reported that medications did not help her back pain at all, and she was having trouble walking. Dr. Neesha D. Kurlan noted that Plaintiff did not have a history of a fall that caused the symptoms. Review of systems showed joint pain in the left knee but no swelling. Plaintiff made an appointment with psychiatry. Dr. Kurlan also noted moderate tenderness in Plaintiff's lower back with bilateral pain, muscle spasm, and limited forward flexion and extension secondary to pain. Dr. Kurlan diagnosed back spasms, spinal stenosis at multiple levels, urinary tract infection, and depression. (Tr. 201-02)

When Plaintiff returned to Dr. Kurlan on May 21, 2012, she reported feeling much better since her last office visit. She still had pain in the middle of her back and could not sleep flat on her back. She requested a note for work, as she was looking for a job with less manual labor. She no longer used a walker and was doing exercises. Examination revealed mild lumbar tenderness. Dr. Kurlan assessed back spasms, much better; disc herniation; and depression. Dr. Kurlan prescribed medication and back exercises, as well as advised Plaintiff to wean off the muscle relaxant as tolerated. (Tr. 228)

During a follow up visit on August 8, 2012, Plaintiff reported that her back pain flared up with certain movements and positions. She requested stronger pain medication. She reported no numbness or tingling in the legs and no weakness. She smoked every day but was considering

7

quitting. Examination again revealed mild tenderness in the bilateral lumbar region. Dr. Kurlan assessed muscle spasm and advised Plaintiff to lose weight. In addition, Dr. Kurlan diagnosed back muscle spasm, spinal stenosis of the lumbar region at multiple levels, and disc herniation. Dr. Kurlan also referred Plaintiff to a dietician. Plaintiff was to return for a routine medical exam with blood testing. (Tr. 226-27)

On August 15, 2012, Plaintiff presented to the clinic for a routine physical. She had been walking recently for exercise. She continued to smoke. Her back pain was better since her last visit with medication. She had no joint or muscle pain. Physical exam was normal, and Dr. Kurlan ordered a routine colonoscopy and blood work. (Tr. 223-24)

On August 31, 2012, Plaintiff visited a neurosurgeon regarding her back pain. She reported back pain and spasms, as well as difficulty lying down, picking up things, sitting, and standing. She further reported numbness and tingling in her back and fingers. The spasms in her thoracolumbar region radiated around her trunk and were exacerbated by bending, walking, and lying on her back. Her symptoms had been successfully treated with medication. Physical examination revealed focal tenderness at T6, L4. The student examiner recommended physical therapy and an MRI. Plaintiff's intake information revealed no functional limitations. Plaintiff reported no difficulty walking, getting dressed, grooming, remembering, eating, or speaking. She did have some problems with falling. Plaintiff had no difficulty with activities of daily living including cooking, cleaning, shopping, and driving. (Tr. 242-49)

Plaintiff returned to Dr. Kurlan on September 5, 2012 for a follow up appointment. Plaintiff reported intermittent pain. She ate hamburgers daily and smoked every day. Dr. Kurlan noted mild tenderness in bilateral lumbar. Plaintiff had decreased range of motion secondary to pain, flexion to shin, and difficulty straightening up secondary to pain. Dr. Kurlan assessed high

8

cholesterol and advised Plaintiff to decrease red meat in her diet. Dr. Kurlan also assessed disc herniation, spinal stenosis, and depression. (Tr. 221-22)

On October 24, 2012, Plaintiff saw a dietitian to help with weight loss. Plaintiff acknowledged that if she lost weight, her back would probably feel better. Goals included exercise, changing from sugar sweetened beverages to sugar free, and adding more vegetables into daily meal plan. (Tr. 220)

Plaintiff followed up with the neurosurgeon regarding back pain on October 26, 2012. The physician prescribed 12 weeks of physical therapy and discharged Plaintiff from the clinic. (Tr. 237-38)

On December 3, 2012, Plaintiff saw Dr. Kurlan for a follow up examination. She complained of back pain from disc herniation. Plaintiff needed a medical exemption to be covered under Medicaid and attend physical therapy. She was doing exercises 20 minutes a day. Physical exam revealed mild tenderness in bilateral lumbar, decreased range of motion secondary to pain, difficulty straightening, and limited flexion. Dr. Kurlan assessed disc herniation, high cholesterol, back muscle spasm, and tobacco dependence. Dr. Kurlan prescribed back exercises and noted that, while physical therapy would be beneficial to Plaintiff, it was not covered with insurance. (Tr. 218-19)

On January 7, 2013, Dr. Kurlan treated Plaintiff for high cholesterol. (Tr. 217)

### IV. The ALJ's Determination

In a decision dated August 15, 2013, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. She had not engaged in substantial gainful activity since March 1, 2012, alleged onset date. The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and

9

obesity. However, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-17)

After considering the record, the ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform light work with the additional limitations of only occasionally stooping, kneeling, crouching, and climbing ramps and stairs; no climbing ropes, ladders, or scaffolds; and avoiding concentrated exposure to extreme cold and unprotected heights. The ALJ noted that the objective medical evidence did not support the degree of symptomatology and functional limitations alleged by Plaintiff. Further, Plaintiff made unsubstantiated and inconsistent statements that diminished her credibility. In addition, the ALJ pointed out Plaintiff's receipt of unemployment benefits into 2013, which indicated that she was capable and willing to work. (Tr. 17-22)

The ALJ further found that Plaintiff was capable of performing her past relevant work as a fast food worker and a housekeeper. The ALJ noted that those jobs did not require the performance of work-related activities precluded by Plaintiff's RFC. Thus, the ALJ concluded that Plaintiff had not been under a disability from March 1, 2012 through the date of the decision. (Tr. 22-24)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

10

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that she has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when

11

required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.* at 1354.

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[1] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

In her Brief in Support of the Complaint, Plaintiff claims that the ALJ erred in determining Plaintiff's RFC by failing to account for additional limitations set forth in the

---

[1] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

12

evidence and by failing to order a consultative examination. Further, Plaintiff argues that the ALJ improperly analyzed Plaintiff's credibility as required by the regulations and applicable case law.

### A. Plaintiff's Credibility

When making credibility determinations with respect to a claimant's statements, the ALJ must "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (Soc. Sec. Admin. July 2, 1996). The ALJ may not discredit the statements solely because they are unsubstantiated by objective medical evidence, and the ALJ's decision must give specific reasons for the credibility findings. SSR 96-7p; *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009) ("an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them."). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Here, Plaintiff merely asserts that the ALJ did not sufficiently address or consider the *Polaski* factors when assessing Plaintiff's credibility. However, contrary to Plaintiff's argument, the ALJ explicitly cited specific reasons for discounting Plaintiff's credibility. First, the ALJ noted the objective medical evidence, which demonstrated degenerative disc disease of the lumbar spine and obesity, did not support Plaintiff's claim of disabling symptoms. (Tr. 18-20) The objective medical evidence showed that Plaintiff had bulging discs and degenerative changes. However, Plaintiff displayed only mild to moderate tenderness on examination, as well

13

as improvement in her level of pain, her gait, and her strength and range of motion resulting from the use of non-narcotic pain medication, a muscle relaxant, and home exercises. (Tr. 18-20) The ALJ noted that this conservative treatment, as well as her disinterest in surgery, diminished her credibility. (Tr. 20-21) The ALJ may rely on a conservative course of treatment and lack of surgery to discredit Plaintiff's allegations. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Further, where symptoms improve with treatment, the ALJ may find a plaintiff's allegations of disabling pain not credible. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

With regard to her alleged depression, the ALJ found that, although Plaintiff briefly used Trazadone, she failed to attend scheduled psychiatric and counseling appointments, and she did not require emergent care or psychotropic medications. (Tr. 21) Failure to follow prescribed treatment is a valid reason for discrediting Plaintiff. *Wildman v. Astrue*, 596, F.3d 959, 969 (8th Cir. 2010). The ALJ also noted the inconsistencies between Plaintiff's statements that she was unable to perform any daily activities and statements to her physicians that she had no difficulty with activities of daily living including cooking, cleaning, shopping, and driving. (Tr. 21) Inconsistencies in statements about daily activities can be a reason for discrediting a plaintiff. *Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010-11 (8th Cir. 2005) (finding inconsistent statements to medical professionals to be a basis for discounting plaintiff's credibility).

Further, the ALJ noted Plaintiff's poor work history, which was sporadic with low lifetime earnings. (Tr. 22) A sporadic work record is evidence pointing to the potential lack of motivation to return to work, and an ALJ is entitled to rely on such evidence to discredit a plaintiff's credibility. *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004); *Walker v. Colvin*, __ F. Supp. 3d. __, 2015 WL 4958671, at *16 (E.D. Mo. Aug. 19, 2015). Likewise, the

14

ALJ properly considered the fact that Plaintiff applied for and received unemployment benefits after she applied for disability benefits. (Tr. 22) "Applying for unemployment benefits adversely affects credibility, although it is not conclusive, because an unemployment applicant 'must hold [her]self out as available, willing and able to work.'" *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991)).

In short, the Court finds that the ALJ thoroughly and properly evaluated Plaintiff's credibility, citing valid reasons for discrediting her allegations of disabling pain. Thus, the Court will defer to the credibility findings of the ALJ and finds that the ALJ's decision is supported by substantial evidence in the record. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

### B. Plaintiff's RFC

With regard to Plaintiff's residual functional capacity, "a disability claimant has the burden to establish [his] RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 404.1545(a)(1).

Here, Plaintiff contends that the ALJ failed to consider Plaintiff's testimony that her conditions caused significant limitations, including the need to use a walker, depression, sitting and walking limitations, the need to rest, daily muscle spasms, and side effects from the muscle relaxant. Plaintiff further asserts that the ALJ should have ordered a consultative examination to

assess Plaintiff's limitations. Defendant argues that the ALJ properly the entire record, including Plaintiff's credible subjective complaints, to determine her RFC.

The Court finds that substantial evidence supports the ALJ's RFC determination and that further development of the record is not warranted. First, as stated above, the ALJ performed a proper credibility analysis, including Plaintiff's alleged mental impairment, and discounted those allegations that were inconsistent with the record as whole. (Tr. 14-17, 21) The ALJ noted that Plaintiff's allegations that she was unable to perform essentially any daily activities was inconsistent with her reports to medical professionals denying any difficulties with in activities of daily living and with the medical records containing no restrictions to such activities. "A claimant's limitation which is self-imposed rather than a medical necessity is a basis upon which an ALJ may discredit the claimant's alleged limitation." *Denkins v. Astrue*, No. 4:11CV394MLM, 2012 WL 274690, at *7 (E.D. Mo. Jan. 31, 2012).

The ALJ then considered Plaintiff's credible allegations and the objective medical evidence to determine that Plaintiff's RFC for light work was diminished by limitations to occasionally stooping, kneeling, crouching, and climbing ramps and stairs; never climbing ropes, ladders, or scaffolds; and avoidance of concentrated exposure to extreme cold and unprotected heights. (Tr. 17) The ALJ thoroughly assessed the medical evidence, including physical limitations contained in the treatment notes. (Tr. 18-22) The ALJ noted that the doctors did not provide any restrictions and advised Plaintiff to exercise. Such exercise recommendation is inconsistent with a more restrictive RFC. *McFarland v. Colvin*, No. No. 2:14CV0042 TCM, 2015 WL 2383461, at *21 (E.D. Mo. May 19, 2015); *see also Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) ("A lack of functional restrictions on the claimant's activities is inconsistent

with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise).

Further, the ALJ relied upon the treatment records and the objective findings of limitations to determine Plaintiff's RFC. Physicians noted normal gait, station, and posture, as well as normal strength, sensation, reflexes, and coordination in the bilateral lower extremities. Examination also revealed only mild to moderate tenderness in the lumbar region. (Tr. 20) These essentially normal observations further support the ALJ's RFC determination. *Moore,* 572 F.3d at 524. While Plaintiff argues that the ALJ failed to obtain an assessment from a physician that supported the ALJ's RFC determination, the absence of an explicit reference to "work" in close proximity to a doctor's description of the plaintiff's medically evaluated restrictions "does not make it impossible for the ALJ to ascertain the [plaintiff's] work-related limitations from that evaluation; such explicit language is unnecessary where the medical evaluation describes the [plaintiff's] functional limitations 'with sufficient generalized clarity to allow for an understanding of how those limitation function in a work environment.'" *Wilkerson v. Astrue,* No. 1:10CV00188 AGF, 2012 WL 569942, at *5 (E.D. Mo. Feb. 22, 2012) (quoting *Cox v. Astrue,* 495 F.3d 614, 620 n.6 (8th Cir. 2007)).

In short, the evidence demonstrates that Plaintiff has some restrictions in her functioning and ability to perform work related activities; however, she failed to carry her burden to prove a more restrictive RFC determination. *Andrews v. Colvin,* No. 4:13-CV-1033-NAB, 2014 WL 2968815, at *3 (E.D. Mo. July 1, 2014). Thus, the Court finds that "[t]he ALJ thoroughly discussed the medical records before outlining his RFC determination, which [this Court] conclude[s] is supported by substantial evidence." *Gaston v. Astrue,* 276 F. App'x 536, 537 (8th Cir. 2008).

17

With regard to Plaintiff's claim that the ALJ failed to properly develop the record and should have ordered a consultative examination, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether Plaintiff is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citation omitted). Here, the record contained thorough documentation of Plaintiff's severe impairments, as well as functional restrictions found by physicians. *Id.* Therefore, the ALJ did not breach his duty to develop the record because the record contained sufficient evidence from which to make an informed decision. *Ulrich v. Astrue*, No. 2:10CV89 JCH(LMB), 2011 WL 7401681, at *13 (E.D. Mo. Dec. 2, 2011). The Court thus finds that substantial evidence supports the ALJ's RFC determination, and the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. An appropriate Judgment shall accompany this Memorandum and Order.

Dated this __9th__ day of September, 2015.

/s/ Ronnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**